Jory D. Lange, Jr. (*Pro Hac Vice* Forthcoming)
THE LANGE LAW FIRM PLLC
6300 West Loop South, Suite 350
Houston, TX 77401
Telephone: (833) 330-3663
Email: jory@jorylange.com
www.MakeFoodSafe.com

Robert Newton Harris, Esq.
Fla. Bar. No.: 87671
THE HARRIS LAW FIRM GROUP, P.A.
800 Brickell Avenue, Suite 1205
Miami, Florida 33131
Tel.: (305)536-6131
Fax: (305)536-6130
robert@harrislawinfo.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| FRANCIS "FRANK" NIZIOLEK, )<br>　　　　　Plaintiff, )<br>　　　v. )<br>　　　　　　　　　　 )<br>AMAZON.COM, INC., a Delaware )<br>Corporation; EZRICARE, LLC, a New )<br>Jersey Limited Liability Company; EZRIRX, )<br>LLC, a Delaware Limited Liability Company )<br>　　　　　Defendants. ) | CASE NO. 8:24-CV-01511<br><br><br><br><br><br>**COMPLAINT** |

Plaintiff Francis "Frank" Niziolek, by and through his attorneys of record, The Lange Law Firm, PLLC (*pro hac vice forthcoming*) and The Harris Law Firm Group, P.A., and for their causes of action against AMAZON.COM, INC., EZRICARE, LLC, and EZRIRX, LLC ("Defendants"), state and allege as follows:

## PARTIES

1.　　At all times relevant to this action, Plaintiff was domiciled in the city of Clearwater, Pinellas County, Florida. Plaintiff is a citizen of the State of Florida.

2.      **Defendant Amazon.com, Inc.** Defendant Amazon.com, Inc. ("Amazon") is a worldwide seller, retailer, and distributor of products through the website Amazon.com. Amazon is a Delaware corporation with its principal place of business in the State of Washington. This court has specific personal jurisdiction over Amazon.  Amazon regularly does business in Florida through its stores, distribution centers, Amazon.com, Inc., and/or the many wholly-owned subsidiaries and affiliated corporations and entities it controls. Amazon has sufficient contacts with the State of Florida by regularly selling and distributing products in Florida, including artificial tears, and by serving a market for artificial tears in Florida. Amazon sold, shipped, distributed, marketed, advertised, inventoried, picked, packed, shipped, billed, and collected payment for artificial tears to Frank Niziolek that caused his injuries. Amazon's contacts with Florida are sufficient that Amazon should reasonably expect to be brought into court in Florida. Amazon may be served with process through its registered agent Corporation Service Company, 300 Deschutes Way, SW STE 208, Tumwater, Washington 98501 or its principal place of business at 410 Terry Ave. N, Seattle, Washington 98109.

3.      Defendant EzriCare, LLC ("EzriCare") is a limited liability company organized, incorporated, and existing under the laws of the State of New Jersey with its principal place of business in New Jersey. Ezriel Green and/or Yehuda Green are the sole members of EzriCare, LLC.  Ezriel Green is domiciled in Ocean County, New Jersey.  Ezriel Green is a citizen of New Jersey. Yehuda Green is domiciled in Ocean County, New Jersey.  Yehuda Green is a citizen of New Jersey. Thus, for purposes of diversity jurisdiction, EzriCare, LLC is a citizen of the state of New Jersey. EzriCare's principal place of business is located in New Jersey at 1525 Prospect St., Ste. 204, Lakewood, NJ 08701 in Ocean County. EzriCare is engaged in the business of importing, selling, supplying, packaging, distributing, and marketing artificial tears products throughout the United States, including to Florida. EzriCare may be served with process at its registered agent

Ezriel Green located at 1525 Prospect St., Ste. 204, Lakewood, NJ 08701.

4.      Defendant EzriRx, LLC ("EzriRx") is a limited liability company organized, incorporated, and existing under the laws of the State of Delaware with its principal place of business in New Jersey. Ezriel Green and/or Yehuda Green are the sole members of EzriRx, LLC.  Ezriel Green is domiciled in Ocean County, New Jersey.  Ezriel Green is a citizen of New Jersey. Yehuda Green is domiciled in Ocean County, New Jersey.  Yehuda Green is a citizen of New Jersey. Thus, for purposes of diversity jurisdiction, EzriRx, LLC is a citizen of the state of New Jersey. EzriRx's principal place of business is located in New Jersey at 1525 Prospect St., Ste. 203, Lakewood, NJ 08701 in Ocean County or 2360 Rt. 9, Suite 3, #171, Toms River, NJ 08755 in Ocean County. EzriRx is engaged in the business of importing, selling, supplying, packaging, distributing, and marketing artificial tears products throughout the United States, including to Florida. EzriRx may be served with process at its registered agent The Corporation Trust Company located at 820 Bear Tavern Road, Ewing, NJ 08628.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a) because the matter in controversy exceeds $75,000, exclusive of costs and it is between citizens of different states (Florida, New Jersey, and Delaware).

6.      This Court has specific personal jurisdiction over Amazon.com, Inc. because Amazon regularly does business in Florida through Amazon.com, Inc. and/or the many wholly-owned subsidiaries and affiliated corporations and entities it controls. Amazon has sufficient contacts with the State of Florida by regularly selling and distributing products in Florida, including artificial tears, and by serving a market for artificial tears in Florida. Amazon sold, distributed, inventoried, picked, packed, shipped, billed, and collected payment for artificial tears which are the subject of this Complaint to Frank Niziolek. Amazon's contacts with Florida are sufficient

that Amazon should reasonably expect to be brought into court in Florida.

7.      This Court has specific personal jurisdiction over EzriCare because EzriCare committed a tort in whole or in part in Florida.  Specifically, EzriCare sold, supplied, distributed, shipped, advertised, and/or marketing artificial tears to Florida residents and/or Florida businesses, including the artificial tears that harmed Frank Niziolek.

8.      This Court has specific personal jurisdiction over EzriRx because EzriRx committed a tort in whole or in part in Florida.  Specifically, EzriRx sold, supplied, distributed, shipped, advertised, and/or marketing artificial tears to Florida residents and/or Florida businesses, including the artificial tears that harmed Frank Niziolek.

9.      Further, this Court has jurisdiction over each Defendant because Defendants are authorized to conduct and do business in Florida. Moreover, Defendants committed tortious acts in the State of Florida, caused injury to a person within this State with their products, materials, things processed, serviced, or manufactured by the Defendants which were used or consumed within this State in the ordinary course of commerce, trade, or use. Therefore, Defendants are subject to the jurisdiction of this State pursuant to Fla. Stat. 48.193(1)(a)(1), (2), and (6).

10.     Further, this Court has jurisdiction over each Defendant because each Defendant engages in substantial, continuous, and systematic contacts with the State of Florida, purposefully directing their activities towards Florida, including the placement of their goods into the stream of commerce with the intent and expectation that they will likely be purchased and used by consumers in Florida. Defendants committed a tort, in whole or in party, in Pinellas County, Florida. This litigation arises out of those activities.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district, and

because Defendants were at all times relevant hereto subject to personal jurisdiction in this judicial district.

12.    All conditions precedent to bringing this action have been performed or have been waived.

### FACTS

**A. The 2023 Outbreak of VIM-GES-CRPA** *(Pseudomonas Aeruginosa)* **Linked to Artificial Tears**

13.    On January 31, 2023, the Centers for Disease Control and Prevention (CDC) and Food and Drug Administration (FDA) announced the multi-state outbreak of VIM-GES-CRPA, a rare strain of extensively drug-resistant *Pseudomonas Aeruginosa,* eye infections linked to the use of artificial tears products, EzriCare Artificial Tears.

14.    Defendants EzriCare and EzriRx imported, packaged, labeled, sold, supplied, distributed, and/or marketed the contaminated artificial tears products. Defendants EzriCare and EzriRx then sold these products through retailers, such as Amazon, Walmart, and eBay.



15.     According to the CDC, as of February 3, 2023, a total of 55 people infected with the outbreak strain were reported from 12 states, including: California, Colorado, Connecticut, Florida, New Jersey, New Mexico, New York, Nevada, Texas, Utah, Washington, and Wisconsin.

16.     One person has died, and there have been 5 reports of vision loss.

17.     The epidemiologic evidence available to investigators at this time indicates that artificial tears was the source of the outbreak. EzriCare Artificial Tears, a preservative-free, over-the-counter product packaged in multidose bottles, was the brand most commonly reported.

18.    Laboratory testing by CDC and FDA identified the presence of VIM-GES-CRPA in opened EzriCare bottles from multiple lots. These bottles were collected from patients with and without eye infections and from two states. VIM-GES-CRPA recovered from opened products match the outbreak strain.

19.    The FDA and CDC alerted that patients should stop using EzriCare Artificial Tears pending additional information and guidance from CDC and FDA.

20.    Further, since the initial announcement, the FDA recommended this recall due to Defendants' current good manufacturing practice (CGMP) violations, including lack of appropriate microbial testing, formulation issues (the company manufactures and distributes ophthalmic drugs in multi-use bottles, without an adequate preservative), and lack of proper controls concerning tamper-evident packaging.

21.    As such, multiple retailers and distributors have recalled or removed Defendants' artificial tears products.

22.    As of filing this complaint, the CDC and FDA's investigations are ongoing.

## B. VIM-GES-CRPA (*Pseudomonas Aeruginosa*)

23.    VIM-GES-CRPA is a rare strain of *Pseudomonas Aeruginosa*. *Pseudomonas Aeruginosa* is a common encapsulated, gram-negative, aerobic–facultatively anaerobic, rod-shaped bacterium that can cause disease in plants and animals, including humans. It is a multidrug resistant pathogen recognized for its ubiquity, its intrinsically advanced antibiotic resistance mechanisms, and its association with serious illnesses.

24.    What makes *Pseudomonas aeruginosa* remarkably dangerous is due to its natural resistance to antibiotics and its ability to grow extensive colonies in conditions of partial or total oxygen depletion. Advanced antibiotic drug regimens are often required for treatment, which can lead to other serious adverse effects.

25.    Per the CDC, VIM-GES-CRPA isolates associated with this outbreak have been extensively drug-resistant (XDR). Isolates that underwent testing at public health laboratories were not susceptible to cefepime, ceftazidime, piperacillin-tazobactam, aztreonam, carbapenems, ceftazidime-avibactam, ceftolozane-tazobactam, fluoroquinolones, polymyxins, amikacin, gentamicin, and tobramycin. A subset of 3 isolates that underwent antimicrobial susceptibility testing for cefiderocol were susceptible to this agent.

C.    *Pseudomonas aeruginosa and Eye Infections*

26.    Studies showing the severity of *Pseudomonas aeruginosa* eye infections go as far back as the 1950s.

27.    *Pseudomonas aeruginosa* eye infections can lead to a severe infection.

28.    What that can be said for certain is that infections with *Pseudomonas aeruginosa* can cause long-term complications, can lead to sepsis or bacteremia (blood stream infections), and permanent injury, including vision loss.

D.    **Frank Niziolek's *Pseudomonas Aeruginosa* Infection**

29.    Frank Niziolek purchased EzriCare Artificial tears before becoming infected with *Pseudomonas aeruginosa*.

30.    In July of 2022, Frank felt itchy and unrelenting pain in his eyes. He called his optometrist. However, after a week, it became apparent that the antibiotics weren't working to stop the infection. His doctor took culture testing and discovered that Frank had developed a corneal ulcer.

31.    By July 6, 2022, doctors confirmed with Frank that he had a *Pseudomonas aeruginosa* infection with multiple antibiotic resistances.

32.    Frank's prognosis continued to worsen. On July 13, 2022, Frank was admitted to the University of Miami Medical Center for the ongoing infection and corneal issues. During this time, he underwent corneal surgery.

33.     The surgery, however, was unsuccessful.

34.     On or about July 15, 2022, Frank underwent surgery to remove his eye.

35.     Frank continues to recover from his surgery and faces uncertain future medical complications.

36.     Frank contracted *Pseudomonas aeruginosa* from EzriCare Artificial Tears sold and shipped by Amazon.  As a direct and proximate result of the *Pseudomonas aeruginosa*, Frank required corneal surgery and, ultimately, surgical removal of his eye.

## CAUSES OF ACTION

### COUNT I
### STRICT PRODUCT LIABILITY

37.     Plaintiff incorporates by reference paragraphs 1 through 36 as though fully set forth herein.

38.     Defendants are in the business of manufacturing, distributing, packaging, labeling, supplying, marketing, advertising, and/or selling the artificial tears products that were the source of the *Pseudomonas aeruginosa* outbreak as described, and the cause of Plaintiff's infection and injuries.

39.     Defendants manufactured, distributed, packaged, labeled, supplied, marketed, advertised, and/or sold the artificial tears products that were the source of the *Pseudomonas aeruginosa* outbreak as described, and the cause of Plaintiff's infection and injuries.

40.     Plaintiff was a reasonably foreseeable and intended user of Defendants' defective artificial tears product.

41.     Because Defendants' eye drops were contaminated with *Pseudomonas aeruginosa*, the eye drops that Defendants manufactured, distributed, packaged, labeled, supplied, marketed, advertised, and/or sold, and that Plaintiff purchased and used, as described previously, were defective and unreasonably dangerous for their reasonably foreseeable uses.

42. Because Defendants' eye drops were contaminated with *Pseudomonas aeruginosa*, the eye drops that Defendants manufactured, distributed, packaged, labeled, supplied, marketed, advertised, and/or sold, and that Plaintiff purchased and used, as described previously, were in a condition that Plaintiff had not contemplated, and were in a condition that rendered the products unreasonably dangerous for their ordinary and expected use.

43. The products that Defendants, manufactured, distributed, packaged, labeled, supplied, marketed, advertised, and/or sold, and that Plaintiff purchased and used, as described previously, was expected to reach Plaintiff, and be used by them, without substantial change. Plaintiff used the products in the manner expected and intended, including when they used it.

44. Plaintiff suffered the aforementioned injuries as a direct and proximate result of their use of the contaminated, defective products manufactured, distributed, packaged, labeled, supplied, marketed, advertised, and/or sold by the Defendants.

45. Defendants are strictly liable to Plaintiff for the harm proximately caused by the manufacture, distribution, packaging, labeling, supplying, marketing, advertising, and/or sale of an unsafe and defective product.

**COUNT II**
**BREACH OF WARRANTY**

46. Plaintiff incorporates by reference paragraphs 1 through 36 as though fully set forth herein.

47. Plaintiff is a consumer.

48. Defendants are manufacturers, packagers, labelers, retailers, producers, distributors, suppliers, and/or merchants who sell products.

49. By offering products for sale to the public, Defendants impliedly warranted that such products were safe to use, that they were not adulterated with a deadly pathogen, and that the products had been safely prepared under sanitary conditions.

50. Defendants breached the implied warranties about the products they manufactured, distributed packaged, labeled, supplied, marketed, advertised, and/or sold, which were used by Plaintiff, causing Plaintiff's injuries and losses.

51. Plaintiff's injuries proximately and directly resulted from Defendants' breach of implied warranties, and Plaintiff is thus entitled to recover for all actual, consequential, and incidental damages that flow directly and in a foreseeable fashion from these breaches.

## COUNT III
### NEGLIGENCE

52. Plaintiff incorporates by reference paragraphs 1 through 36 as though fully set forth herein.

53. Defendants, as the manufacturer and/or seller of artificial tears products, owed a duty to the consuming public in general, and Plaintiff in particular, to exercise reasonable care to design, test, manufacture, inspect, distribute, and sell products free of unreasonable risk of harm to users and patients, when said product is used in its intended manner.

54. Defendants manufactured, prepared, distributed, and sold products that were adulterated with *Pseudomonas aeruginosa*, contaminated with *Pseudomonas aeruginosa*, and that were not reasonably safe as designed, manufactured, or sold.

55. Defendants were negligent in failing to design the product so as to include preservatives to decrease the risk of bacterial growth in the product.

56. Defendants manufactured, distributed packaged, labeled, supplied, marketed, advertised, and/or sold products that were adulterated with *Pseudomonas aeruginosa*, contaminated with *Pseudomonas aeruginosa*, and that were not reasonably safe as designed, manufactured, or sold.

57. Defendants were negligent in how they manufactured, distributed packaged, labeled, supplied, marketed, advertised, and/or sold products that were adulterated with *Pseudomonas aeruginosa*, contaminated with *Pseudomonas aeruginosa*, and not reasonably safe because they

were contaminated with *Pseudomonas aeruginosa* and because adequate warnings or instructions were not provided, including but not limited to the warning that its products may contain *Pseudomonas aeruginosa*, and thus should not be given to, or used by humans.

58.     Defendants had a duty to properly supervise, train, and monitor its employees, or the employees of its agents or subcontractors, engaged in the preparation of its products, to ensure compliance with Defendants' operating standards and to ensure compliance with all applicable health regulations. Defendants failed to properly supervise, train, and monitor these employees, or the employees of its agents or subcontractors engaged in the import, manufacture, preparation and delivery of the products, and thus breached that duty.

59.     Defendants owed a duty to Plaintiff to comply with all statutory and regulatory provisions that pertained or applied to the manufacture, distribution, storage, labeling, and sale of its products, including all applicable local, state, and federal health and safety regulations. Defendants, by their manufacture, distribution, storage, labeling, and sale of adulterated and unsafe products, failed to conform to this duty.

60.     Defendants owed Plaintiff the duty to exercise reasonable care in the preparation and sale of its products, as it was reasonably foreseeable that the defendant's manufacture, distribution and sale of products contaminated with *Pseudomonas aeruginosa* would cause injury and harm to all persons potentially exposed to *Pseudomonas aeruginosa* as a result. Defendants breached that duty, thereby causing injury to Plaintiff.

61.     Defendants were negligent in manufacturing, preparing, distributing and selling products adulterated and/or contaminated with *Pseudomonas aeruginosa*, a dangerous pathogen. Defendants' negligent acts and omissions included but were not limited to the following: Defendants' current good manufacturing practice (CGMP) violations, including lack of appropriate microbial testing, formulation issues (the company manufactures and distributes

ophthalmic drugs in multi-use bottles, without an adequate preservative), and lack of proper controls concerning tamper-evident packaging.

62.    Defendants owed Plaintiff a duty to comply with all statutory and regulatory provisions that pertained or applied to the manufacture, distribution, storage, labeling and sale of its products, including the applicable provisions of the federal U.S. Food, Drug and Cosmetic Act.

63.    The products that Defendants manufactured, distributed and sold, and that the consumers purchased and consumed, was "adulterated" within the meaning of the federal Food, Drug and Cosmetic Act.

64.    Defendants violated federal, state, and local safety regulations by its manufacture, distribution, and sale of adulterated products.

65.    The federal, state, and local product safety regulations applicable here, and as set forth above, establish a positive and definite standard of care in the manufacture, distribution and sale of products, and the violation of these regulations constitutes negligence per se.

66.    Plaintiff was in the class of persons intended to be protected by these statutes and regulations and was injured as the direct and proximate result of Defendants' violation of applicable federal, state, and local safety regulations.

67.    Plaintiff's injuries proximately and directly resulted from the negligence of Defendants, and from Defendants' violations of statutes, laws, regulations, and safety codes pertaining to the manufacture, production, supply, distribution, storage, and sale of products.

Defendants breached the aforementioned duties as alleged herein, which breach constituted the proximate cause of Plaintiff's injuries.

## PRAYER FOR RELIEF AND DAMAGES AS TO ALL COUNTS

68.     Defendants' conduct was a direct, proximate, and producing cause of Plaintiff's injuries and damages, including but not limited to damages in the past and future for the following: pain and suffering, mental anguish, emotional distress, physical impairment, physical disfigurement, loss of enjoyment of life, medical and pharmaceutical expenses, travel and travel-related expenses, emotional distress, punitive and/or exemplary damages and attorneys' fees (to the extent recoverable) and other general, special, ordinary, incidental and consequential damages as would be anticipated to arise under the circumstances.

69.     WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

   a.   That the Court award Plaintiff judgment against Defendants for past and future economic and non-economic damages;

   b.   That the Court award all such other sums as shall be determined to fully and fairly compensate Plaintiff for all general, special, incidental and consequential damages incurred, or to be incurred, by Plaintiff as the direct and proximate result of the acts and omissions of Defendants;

   c.   That the Court award Plaintiff costs, disbursements and reasonable attorneys' fees incurred;

   d.   Pre- and post-judgment interest at the highest rate allowed by law;

   e.   Punitive and/or exemplary damages;

   f.   That the Court award Plaintiff the opportunity to amend or modify the provisions of this Complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served; and

   g.   That the Court award such other and further relief as it deems necessary and proper in the circumstances.

**JURY TRIAL DEMAND**

Plaintiff demands trial by jury on all issues raised herein.

Dated:  June 21, 2024.

Respectfully submitted,

By:   **/s/ Robert N. Harris**
Robert Newton Harris, Esq.
Fla. Bar. No.: 87671
THE HARRIS LAW FIRM GROUP, P.A.
800 Brickell Avenue, Suite 1205
Miami, Florida 33131
Tel.: (305)536-6131
Fax: (305)536-6130
Email: robert@harrislawinfo.com
www.HarrisLawInfo.com

—And—

Jory D. Lange, Jr. (*Pro Hac Vice* forthcoming)
THE LANGE LAW FIRM PLLC
6300 West Loop South, Suite 350
Houston, TX 77401
Telephone: (833) 330-3663
Email: jory@jorylange.com
www.MakeFoodSafe.com

**ATTORNEYS FOR PLAINTIFF**